# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| LOUIS DREYFUS COMPANY FREIGHT ASIA PTE LTD, | § § § | |
| Plaintiff, | § § | C.A. NO. _____ |
| VS. | § § | ADMIRALTY F.R.C.P. 9(h) |
| AMERICAN MARITIME SERVICES, LLC, | § | |
| Defendant. | | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Louis Dreyfus Company Freight Asia PTE Ltd ("LDC") brings this action against Defendant American Maritime Services, LLC ("AMS"), and shows as follows:

## I.
## JURISDICTION & VENUE

1. This is an admiralty and maritime claim within the meaning of Federal Rule of Civil Procedure 9(h), as this matter arises out of a breach of a maritime contract and maritime torts. This Court has jurisdiction over the subject matter of these claims pursuant to 28 U.S.C. § 1333(1). The Court also has supplemental jurisdiction over any and all state law causes of action pursuant to 28 U.S.C. § 1367. Alternatively, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 as there exists diversity of citizenship between the parties and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

2. Venue is proper in the Southern District of Texas, Corpus Christi Division, pursuant to 28 U.S.C. § 1391(b)(2) because it is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

## II.
## PARTIES

3. LDC is a Singapore private limited company with its principal place of business in Singapore.

4. AMS is a limited liability company incorporated in the State of Louisiana. It is not registered to do business in Texas. Its principal place of business is 13080 Chef Menteur Hwy, New Orleans, Louisiana 70129.

## III.
## FACTUAL BACKGROUND

5. On January 6 and 7, 2021, AMS negotiated and provided a bid to LDC (through LDC's agent, Blue Water Shipping Inc. ("Blue Water")), to clean cement residue from the cargo holds of the *MV Evgenia K* (the "Vessel"). LDC had chartered, and was the disponent owner of, the Vessel at the time. AMS quoted a lump sum price of $59,500 to clean five holds (the "Work") and guaranteed they would be cleaned to a "grain clean" standard and that the Vessel would pass National Cargo Bureau (NCB) and the United States Department of Agriculture (USDA) inspections. AMS' bid and contemporaneous communications represented that the cleaning of the Vessel should have been complete upon arrival at New Orleans, the next load port.

6. AMS' offer to perform the Work was made on a "no cure no pay" basis. In other words, AMS' bid provided that it would not be paid if it did not "cure." The "cure" in this context was the cleaning of the Vessel to a grain clean standard and the Vessel passing inspection within a reasonable period of the estimated time to complete the Work.

7. Moreover, when AMS submitted its bid, AMS was aware that LDC's subcharterer, Crystal Seas Shipping Co Ltd. ("Crystal Seas"), was waiting for the Vessel in New Orleans to load

the next cargo. Thus, AMS knew that LDC had a rapidly approaching obligation to provide the cleaned and successfully inspected Vessel to its subcharterer.

8.  In reliance on AMS' guarantees and estimated time to complete the Work, LDC accepted AMS' "no cure no pay" bid, forming a contract ("Contract"), and AMS began the Work while the Vessel was at or near Corpus Christi, Texas.

9.  The Work consists of, among other things, a dry cleaning phase and a subsequent wet cleaning phase. AMS agreed to complete the dry cleaning phase in port in Corpus Christi and then continue the wet cleaning phase while the Vessel was in transit to New Orleans. It represented that the entire project would be finished three days after the dry cleaning was completed. It provided four members of its shore gang to accompany the Vessel during the transit to New Orleans for this purpose.

10.  AMS began Work on January 13, 2021. AMS determined and informed Blue Water, LDC's agent, that the dry clean was complete on or around January 18, 2021, and authorized the vessel to depart to New Orleans. Unfortunately, the dry cleaning was in fact not complete and dry cement cargo remained in the hold. The failure to properly carry out the dry cleaning along with improperly cleaning the holds from the top to the bottom, ineffective use of equipment, and an unproductive and inefficient AMS crew resulted in the hardening of the remaining cement in route and an unnecessarily long period to complete the cleaning. Even allowing for weather delays in route, the Vessel was not ready for inspection within a reasonable period after the Vessel arrived in New Orleans on or about January 20, 2021.

11.  AMS continued the cleaning process and scheduled the inspections with the NCB and the USDA for February 3, 2021, after representing to LDC, through Blue Water, that the Work would be finished by that date. The Vessel failed the inspection.

12. Over the next two weeks, AMS continued cleaning the holds, repeatedly representing that it would finish cleaning the Vessel in another one to two days. Yet, the Vessel did not pass inspection until February 16, 2021. AMS took thirty-four days to complete the Work, far in excess of the estimated and reasonable time to perform the Work.

13. Because of AMS' failure to properly clean the Vessel as required, Crystal Seas took the Vessel "off hire" causing LDC at least $432,272.78 in damages in lost hire payments. Further, on March 29, 2021, Crystal Seas initiated arbitration against LDC in London, England, for damages in the amount of $1,106,000, which were incurred as a result of the Vessel's late tender due to AMS' performance failures described above. Additionally, LDC may be at risk of additional claims in the event Crystal Seas seeks reimbursement of the hire it paid to LDC prior to placing the Vessel off-hire. LDC's damages also include, but are not limited to, extra expenses totaling approximately $30,000, costs incurred for boat launches and river operations totaling at least $120,000, and the cost of additional bunker consumption in the amount of approximately $39,000 due to the increased length of time the Vessel was in port as a result of AMS' failure to timely perform. The total amount of damages presently known is approximately $1,727,272.78. LDC has satisfied all conditions precedent to the Contract.

## IV.
## CAUSES OF ACTION

14. LDC incorporates the above paragraphs by reference as if set forth in their entirety.

**A. Breach of Contract**

15. LDC and AMS entered into the Contract under which AMS agreed to clean the Vessel to a grain clean standard. AMS also guaranteed that the Vessel would pass inspection and that it would take 3 days to complete the cleaning once the dry cleaning was complete.

Additionally, AMS had actual knowledge that time was a critical component. AMS failed to properly, timely, or reasonably clean the Vessel which failed the February 3, 2021, inspection.

16. LDC has incurred damages as set forth in paragraph 13. LDC also seeks pre and post-judgment interest, attorney's fees, and costs.

**B.  Breach of Workmanlike Services**

17. Under maritime law, a contractor's services are subject to an implied warranty of workmanlike performance. Therefore, AMS owed a duty to LDC to perform its Work in a workmanlike manner. AMS failed to perform the Work in a workmanlike way in accordance with accepted standards with the customary standard of skill and care of a contractor performing vessel cleaning services. AMS breached this duty to LDC and, as a result, proximately caused LDC's damages.

18. LDC has incurred damages as set forth in paragraph 13. LDC also seeks pre and post-judgment interest, attorney's fees, and costs.

**C.  Maritime Negligence**

19. Under maritime law, a party that fails to perform its obligations is liable for the maritime tort of negligence. AMS owed a duty to LDC to use reasonable care when performing the Work and to act as a prudent service provider would act. It failed to perform the Work with reasonable care, skill, and diligence. AMS breached this duty to LDC and, as a result, proximately caused LDC's damages. AMS' acts and omissions, including those stated above, constitute independent acts of negligence for which it is liable.

20. LDC has incurred damages as set forth in paragraph 13. LDC also seeks pre and post-judgment interest, attorney's fees, and costs.

### D. Indemnification

21. To the extent a court or other arbiter of competent jurisdiction determines that Crystal Seas or any other third party is entitled to recover against LDC, LDC is entitled to recover reimbursement, indemnification, and/or contribution from AMS and/or those responsible, in an amount equal to the total sum of any such judgment, together with interest, expenses, costs, and attorney's fees. If any such damages were incurred, they were caused by AMS' deficient performance.

### E. Declaratory Judgment

22. An actual controversy exists between the parties regarding their respective rights and obligations under the Contract in dispute. This Court has jurisdiction to declare the rights, status, and legal relations between the parties. LDC therefore seeks the following declarations pursuant to Rule 57 of the Federal Rules of Civil Procedure:

   a. AMS agreed to perform its services on a "no cure no pay" basis;

   b. AMS breached the Contract with LDC;

   c. The Contract included a lump sum price of $59,500;

   d. LDC is not obligated to pay AMS for the services rendered;

   e. Alternatively, if LDC is obligated to pay AMS for the services rendered, the amount owed to AMS is $59,500;

   f. LDC sustained damages which are attributable to the negligence and legal fault of AMS; and

   g. AMS is required to indemnify LDC equal to the total sum for each judgment, award, or settlement including interest, expenses, costs, and attorney's fees, entered against LDC as a result of the events described herein.

# V.
# ATTORNEY'S FEES

23. As LDC seeks recovery for breach of the warranty of workmanlike performance and a declaratory judgment, it is entitled to recover its attorneys' fees.

# PRAYER

WHEREFORE, Plaintiff Louis Dreyfus Company Freight Asia Pte. Ltd respectfully requests that the Court grant it judgment against American Maritime Services, LLC and award it:

a. Actual damages,

b. A declaratory judgment as set forth in Section E,

c. Pre- and post-judgment interest,

d. Attorneys' fees,

e. Costs of Court, and

f. All other relief to which it is justly entitled.

Respectfully submitted,

By: /s/ David James
David James
State Bar No. 4032467
djames@clarkhill.com
2615 Calder Avenue, Suite 240
Beaumont, Texas 77702-1986
T: 409.351.3800
F: 409.351.3883

**ATTORNEY-IN-CHARGE FOR LOUIS DREYFUS COMPANY FREIGHT ASIA PTE LTD.**

**OF COUNSEL:**
Adam Diamond
Adiamond@clarkhill.com
State Bar No. 24092344
909 Fannin, Suite 2300

Houston, TX  77010
(713) 951-5600 – Telephone
(713) 951-5660 – Facsimile
Clark Hill PLC

**AND**

Christopher Lowrance
Chris.Lowrance@roystonlaw.com
State Bar No. 00784502
802 N. Carancahua, Suite 1300
Corpus Christi, Texas 78401
(361) 884-8808 – Telephone
(361) 884-7261 -- Facsimile
Royston, Rayzor, Vickery & Williams, L.L.P.

**COUNSEL FOR LOUIS
DREYFUS COMPANY FREIGHT
ASIA PTE LTD.**